**SL SERVICE, INC., Plaintiff–Appellee,**

v.

**UNITED STATES, Defendant– Appellant.**

No. 03–1174.

United States Court of Appeals, Federal Circuit.

Feb. 4, 2004.

Evelyn M. Suarez, Williams Mullen, of Washington, DC, argued for plaintiff-appellee.

Barbara Silver Williams, Attorney, International Trade Field Office, United States Department of Justice, of New York, NY, argued for defendant-appellant. With her on the brief were Peter D. Keisler, Assistant Attorney General; and David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC; and John J. Mahon, Acting Attorney in Charge, International Trade Filed Office. Of counsel was Karen P. Binder, Attorney, Office of Assistant Chief Counsel, United States Customs Service, of New York, NY.

Lauren R. Howard, Collier Shannon Scott, PLLC, of Washington, DC, for amicus curiae Shipbuilders Council of America, Inc.

Before MAYER, Chief Judge, BRYSON and LINN, Circuit Judges.

MAYER, Chief Judge.

The United States Customs Service ("Customs") appeals the judgment of the Court of International Trade granting summary judgment in favor of SL Service, Inc. ("SL Service").[1] *SL Serv., Inc. v. United States*, 244 F.Supp.2d 1359 (Ct. Int'l Trade 2002). Because the Court of International Trade erroneously applied *Texaco Marine Services, Inc. v. United States*, 44 F.3d 1539 (Fed.Cir.1994) ("*Texaco*"), we reverse.

### Background

Between November 22 and December 1, 1995, the Sea–Land Pacific, a ship owned by SL Service, was dry-docked at the Hongkong United Dockyards for the purpose of obtaining American Bureau of Shipping and United States Coast Guard required inspections and modifications,

which are non-dutiable, in addition to dutiable repairs. Upon returning to the United States, Customs assessed a duty pursuant to 19 U.S.C. § 1466(a), which states that "[t]he equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the *expenses of repairs* made in a foreign country upon a vessel documented under the laws of the United States ... shall ... be liable to entry and the payment of an ad valorem duty ... on the cost thereof in such foreign country." (emphasis added).

As part of this assessment, Customs determined that the cost of dry-docking should be considered an "expense of repair" because it was necessitated by the dutiable repairs as well as the non-dutiable inspections and modifications. Customs did not, however, impose the 50% *ad valorem* duty on the full cost of dry-docking. Instead, it determined that only that portion of the cost of dry-docking attributable to the dutiable repairs should be used to calculate the duty. This amount was determined by dividing the cost of dutiable repairs by the sum of the cost of dutiable and non-dutiable work. The cost of dry-docking was then multiplied by this fraction, resulting in an estimation of the cost of dry-docking due to the dutiable repairs. The 50% *ad valorem* duty was applied to this amount.

After having timely protested the liquidation to Customs, SL Service brought this challenge in the Court of International Trade claiming that the duty imposed on dry-docking violated the "but for" test prescribed by *Texaco* and that the apportionment technique was contrary to section 1466(a). In addition, SL Service argued that Customs violated 19 U.S.C. § 1625(c) by failing to provide notice and receive

---

1. On November 9, 1999, the Court of International Trade designated this case a test case.

*SL Serv.*, 244 F.Supp.2d at 1360.

comment about the use of apportionment. Having stipulated that the Sea–Land Pacific was dry-docked for no longer than necessary to complete the non-dutiable inspections and modifications, both parties moved for summary judgment.

The Court of International Trade granted summary judgment in favor of SL Service. It found that *Texaco* delineated two categories of expenses for the purpose of 19 U.S.C. § 1466(a). The first category, considered "expenses of repairs" and therefore dutiable, would not be incurred "but for" the undertaking of dutiable repairs. The second category, non-dutiable expenses, referred to those expenses incurred for the purpose of obtaining only non-dutiable inspections and modifications as well as those required by both dutiable and non-dutiable work ("dual-purpose expenses"). Based on this reading of *Texaco,* the court determined that the duty was arbitrary, capricious and in violation of the law because the dry-docking of the Sea–Land Pacific was necessitated by both non-dutiable and dutiable work. As such, it was a dual-purpose expense not subject to section 1466(a).

On appeal, Customs contends that the Court of International Trade's interpretation of *Texaco* is too narrow and in contravention of the language and purpose of 19 U.S.C. § 1466(a). Customs claims that the holding in *Texaco* applies only to expenses incurred as the result of either non-dutiable or dutiable work ("single-purpose expenses"), but not to dual-purpose expenses. Further, it argues that section 1466(a), a statute enacted to protect the domestic shipbuilding and repair industry, should not be interpreted in a manner that would allow artful ship-owners to avoid virtually all duties on expenses of foreign repairs.

## Discussion

This case raises two questions: (1) whether dry-docking that is required by both dutiable and non-dutiable work is an "expense of repair"; and (2) whether Customs' use of apportionment is permissible. With respect to both, we answer in the affirmative.

We review a grant of summary judgment by the Court of International Trade *de novo. New Zealand Lamb Co., Inc. v. United States,* 149 F.3d 1366, 1367 (Fed. Cir.1998). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Ct. Int'l Trade R. 56(c); Fed.R.Civ.P. 56(c).

■ 1. The crux of the error below was the court's misinterpretation and resulting misapplication of *Texaco,* in which we were asked to decide whether "cleaning performed subsequent to dutiable repairs ... [and] ... work associated with protective coverings used during dutiable repairs" were "expenses of repairs" and, therefore, dutiable. 44 F.3d at 1541. We determined that the expenses at issue were dutiable because they would not have been incurred "but for" dutiable repairs. *Id.* at 1544. In so holding, we announced the following test: "expenses of repairs" covers all expenses "which, but for dutiable repair work, would not have been incurred." *Id.*

The most obvious difference between the facts here and those in *Texaco* is that *Texaco* dealt with single-purpose expenses while the dry-docking of the Sea–Land Pacific was a dual-purpose expense. As such, the "but for" test, which was formulated for classification of single-purpose expenses, is inapplicable. SL Service counters that *Texaco* did, in fact, "consider" dual-purpose expenses. It relies on a footnote in *Texaco,* which states

Although it appears that some cleaning of the cargo tanks to prepare them to carry cargo would have been necessary even if the repairs had not been made, it also is true that all the debris mentioned in the invoice was created by the repairs. In this regard, the invoice does not indicate that the cleaning included the cleaning of the remains of previous cargo. In any event, Texaco has made no effort to separate from the total G–2(g) expenses amounts that would have been incurred to clean the cargo tanks as a normal maintenance service had the G–2 repairs not been made.

44 F.3d at 1548 n. 9. SL Service extrapolates from this that we specifically considered dual-purpose expenses because we noted that the petitioner in *Texaco* could have differentiated the expenses at issue but chose not to. Our observation, however, did nothing to change the nature of expenses at issue, all four of which were single-purpose expenses. *Id.* at 1541–42. It is irrelevant to our determination of the dutiability of dual-purpose expenses that Texaco could have argued that the cleaning expenses were necessitated by both dutiable and non-dutiable work. The precedential force of *Texaco* applies only to single-purpose expenses. This is equally true with respect to *Sea–Land Service, Inc. v. United States*, 239 F.3d 1366 (Fed. Cir.2001), because it addressed the same type of expenses considered by *Texaco*.

SL Service also submits that the discussion in *Texaco* of *United States v. Geo Hall Coal*, 142 F. 1039 (2d Cir.1906), establishes that the "but for" test applies to dual-purpose expenses. 44 F.3d at 1545–46. According to SL Service, the section referring to *Geo Hall Coal* held that dry-docking was not a dutiable expense when it is required by non-dutiable inspections and modifications. This contention, however, is not supported by either case.

First, there is no evidence that the dutiable repairs in *Geo Hall Coal* required dry-docking. The only information available to us now, or in *Texaco*, was contained in an unpublished opinion of the Department of Treasury Board of General Appraisers, which did not specify the type of dutiable repairs performed or whether they necessitated dry-docking. The decision stated only that dry-docking is not *always* an expense of repairs because dutiable repairs are made. For instance, dry-docking may be required by the inspections and modifications, but not by the dutiable repairs. Therefore, it is just as likely that the outcome in *Geo Hall Coal* is consistent with our holding here. Second, *Geo Hall Coal* addressed a jurisdictional question only. 134 F. 1003 (S.D.N.Y.1905), *aff'd*, 142 F. 1039 (2d Cir.1906). There were no findings with respect to the dutiability of dry-docking. Finally, the discussion in *Texaco* is consistent with the fact that the dutiable repairs in *Geo Hall Coal* did not require dry-docking. 44 F.3d at 1545–46. According to *Texaco*, "the board held that the dry-docking expense was not subject to the vessel repair duty because the board found that the expense would have been incurred irrespective of whether or not dutiable repairs were performed." *Id.* at 1546. This does not imply, as SL Service contends, that dry-docking is never dutiable when required by non-dutiable inspections and modifications. It merely reiterates that the dry-docking in *Geo Hall Coal* was required by the inspections and modifications and would have been needed whether or not the dutiable repairs, which did not necessarily require dry-docking, were performed.

The well-developed history of the "but for" test instructs that special treatment is required when concurrent and independently sufficient acts combine to cause harm. *See* W. Page Keeton et al., Prosser and Keeton on The Law of Torts § 41, at

266 (5th Ed.1984). In one such scenario, two negligently caused fires merged and destroyed a plaintiff's property. *See McClellan v. St. Paul, M & M R. Co.*, 58 Minn. 104, 59 N.W. 978 (1894); Dan B. Dobbs, The Law of Torts § 171, at 414 (2000). "[A] literal and simple version of the but-for test holds that neither defendant's act is a cause of the harm." Dobbs § 171, at 414. Such a result, however, has been universally condemned as "violating both an intuitive sense of causation and good legal policy." *Id.* § 171, at 415; *see also* Restatement (Third) of Torts: Liability for Physical Harm § 27 (Tentative Draft No. 2) ("[C]ourts have long imposed liability when a tortfeasor's conduct, while not necessary for the outcome, would have been a factual cause if the other competing causal set had not been operating.").

The non-dutiable inspections and modifications and the dutiable repairs are analogous. In the same sense that each fire was responsible for the damage, the dry-docking was equally *caused* by both the non-dutiable and dutiable work. And just as the tortfeasor in concurrent causation cases is held responsible for the harm he causes, it is rational to consider the dry-docking an "expense of repairs."

■ *Texaco* did not hold that dry-docking is always non-dutiable when required by inspections and modifications. In fact, there is no basis upon which to contend that it even considered dual-purpose expenses. Dry-docking that is required by dutiable repairs is, therefore, rightly considered an "expense of repairs" and is subject to 19 U.S.C. § 1466(a).

■ 2. SL Service next argues that Customs' method of apportionment is contrary to 19 U.S.C. § 1466(a). According to SL Services' line of reasoning, apportionment is illegal because the imposition of a duty on dry-docking violates the "but for" test. This argument, of course, simply relies on its primary contention that dual-

purpose dry-docking is not dutiable. However, apportionment is consistent with section 1466(a) and the "but for" test. In the context of dual-purpose expenses, it is rational to impose the duty on only that portion of the expense that is fairly attributable to the dutiable repairs. Indeed, to impose the 50% *ad valorem* duty on the entire cost of dry-docking in this case would exceed the mandate of the statute. The logical appeal of apportionment has been recognized in other areas of the law. In tort law, "apportionment may be made on the ground that one defendant caused a particular loss or an identifiable share of the loss and should be liable for no more." Dobbs § 170, at 413.

In addition, apportionment has been used by Customs for some time and is, therefore, entitled to deference. *See Zenith Radio Corp. v. United States*, 437 U.S. 443, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978); *see also Brown v. Gardner*, 513 U.S. 115, 122, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); *Toyota Motor Sales, U.S.A., Inc. v. United States*, 585 F.Supp. 649, 7 C.I.T. 178, 192 (1984), *aff'd*, 753 F.2d 1061 (Fed.Cir.1985) ("In interpreting a statute a long-standing administrative practice is entitled to deference by the courts, even where, as here, judicial review is *de novo*."). As evidence of its practice, Customs provided three letters documenting the use of apportionment in the liquidation of vessel repair entries. In all three letters the cost of obtaining a gas free certificate was apportioned between the dutiable repairs and non-dutiable work. Customs explained in the letter dated March 31, 1993:

The costs associated with obtaining a Gas Free Certificate constitute ordinary and necessary expenses incident to repair operations and are thus dutiable. In liquidating these charges, such charges are to be apportioned between the costs which are to be remitted and

those for which relief is not warranted, and duty assessed on that portion of the charges applicable to items which are not being remitted. In the present case, as the certificates related to inspections, they should be pro-rated accordingly." Customs' long-standing practice of apportioning the cost of various expenses between dutiable repairs and non-dutiable inspections and modifications comports with both the statute and common sense.

■ Finally, SL Service contends that Customs' use of apportionment had the effect of modifying either prior rulings or "the treatment previously accorded ... to substantially identical transactions," and, therefore, triggered 19 U.S.C. § 1625(c). As evidenced by the "Customs Information Exchange" letters, however, Customs has used apportionment in the context of section 1466(a) for more than 40 years. Because apportionment is an established agency practice, its use does not constitute the revocation or modification of a previous ruling or treatment, and therefore section 1625(c) is inapplicable.

### Conclusion

Accordingly, the judgment of the Court of International Trade is reversed.

*REVERSED.*

BRYSON, Circuit Judge, dissenting.

I respectfully dissent.

The vessel repair statute, 19 U.S.C. § 1466(a), imposes a duty on the "expenses of [ship] repairs made in a foreign country." In *Texaco Marine Services, Inc. v. United States*, 44 F.3d 1539 (Fed.Cir. 1994), this court held that in determining whether a particular expense is a dutiable expense of repair, a "but for" test should be used. The court thus interpreted "expenses of repair" as covering "all expenses (not specifically excepted in the statute) which, but for dutiable repair work, would not have been incurred. Conversely, 'expenses of repairs' does not cover expenses that would have been incurred even without the occurrence of dutiable repair work." 44 F.3d at 1544. Application of the "but for" test would render the dry-docking expenses at issue in this case non-dutiable, because the dry-docking was done for inspection and maintenance purposes as well as for repairs, and thus the expenses would have been incurred even without the occurrence of the dutiable repair work.

The court today holds that the expenses are dutiable by accepting the government's invitation to depart from the "but for" test of *Texaco* with respect to expenses that are attributable to two or more causes. In that setting, the court holds, the dutiable share of the expenses should be determined by apportionment between the dutiable repairs and the other cause or causes of the expenditure. I disagree with the court's adoption of this "multiple causes" gloss on *Texaco*. Instead, I would apply the "but for" test of *Texaco* in this context and, based on that test, I would uphold the decision of the Court of International Trade that the expenses at issue in this case are not dutiable.

As I read the decision in *Texaco*, the court anticipated cases of this sort. Particularly enlightening is the *Texaco* court's treatment of the earlier decision in the *Geo Hall Coal* case to which the majority alludes. *Geo Hall Coal* involved dry-docking expenses that were incurred for the purpose of determining whether repairs were necessary. The dry-docking expenses in that case were held not to be dutiable. While the majority is correct that the cryptic statement of the facts by the Board of General Appraisers in the *Geo Hall Coal* case does not state that the dry-docking was necessary to perform the repairs at issue in that case, the *Texaco* court treated the dry-docking expenses as

if they were necessary for the repairs. *See* 44 F.3d at 1546, quoting *Int'l Navigation Co. v. United States,* 38 Cust.Ct. 5, 148 F.Supp. 448 (Cust.Ct.1957). Based on that premise, the *Texaco* court concluded that the dry-docking expenses in that case nonetheless were not dutiable because they "would have been incurred irrespective of whether or not dutiable repairs were performed." 44 F.3d at 1547. As applied to this case, that principle means that the dry-docking expenses in this case should not be dutiable because those expenses would have been incurred irrespective of whether or not dutiable repairs had been performed.

In departing from the *Texaco* "but for" test, the court today looks to tort law principles of causation as applied to multiple tortfeasors. In that setting, the law generally holds each tortfeasor liable for the victim's injury if that tortfeasor's conduct was sufficient to cause the injury even if, because of the conduct of the others, the victim would have suffered the same injury absent each particular tortfeasor's conduct. For such cases, it makes good sense to depart from the "but for" test, because the consequences of adhering to the test would be that all of the multiple culpable actors would escape liability and the one innocent party—the victim—would be forced to bear the burden of the injury. In the context of the vessel repair statute, however, the question is not whether and how to compensate the victim of a wrong. Congress has determined that a duty of 50 percent on foreign repairs is the appropriate amount to protect the American shipbuilding industry from foreign competition; the question before us is simply whether, in determining how to calculate that 50 percent duty, a particular expense should be attributed to the cost of repairs. And the answer to that question is best given by the formula set forth in *Texaco:* that the expense is not an expense of repair if it "would have been incurred irrespective of

whether or not dutiable repairs were performed." 44 F.3d at 1546.

Quite apart from the teachings of the *Texaco* case, the government's proposed method of determining causation in a multiple cause setting finds no support in the vessel repair statute. The government's method requires Customs to apportion the costs in question between dutiable costs of repair and other, nondutiable costs. The statute, however, offers no guidance as to how such an apportionment should be conducted; in fact, the statute contains no reference to apportionment at all, which suggests that Congress did not have in mind that Customs would subdivide "multiple cause" expenses into dutiable and nondutiable portions.

Based on the language of the statute, as construed by this court in *Texaco,* I believe that the Court of International Trade applied the proper test for determining causation in the setting presented by this case, and I would therefore affirm the judgment of the trial court.